IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CLETIS J. RYAN,                    )
                                   )
        Plaintiff,                 )
                                   )
vs.                                )CIVIL ACTION NO. 04-00290-WS-B
                                   )
JO ANNE B. BARNHART,               )
Commissioner of                    )
Social Security,                   )
                                   )
        Defendant.                 )

## REPORT AND RECOMMENDATION

Plaintiff Cletis J. Ryan ("Plaintiff") brings this action seeking judicial review of a final decision of the Commissioner denying his claim for period of disability, disability insurance and supplemental security income benefits, under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-433 and 1381-1383(c). This action was referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The parties waived oral argument. Upon careful consideration of the record, the undersigned respectfully recommends that the decision of the Commissioner be **AFFIRMED.**

I.  **Procedural History**

On February 25, 2002 and March 5, 2002, Plaintiff protectively filed applications for supplemental security income

benefits and disability insurance benefits, alleging that he has been disabled since February 15, 2002 due to emphysema, diabetes mellitus, depression, anxiety, foot pain, and restricted shoulder movement. (Tr. 10-11, 46-47, 77-89, 302-303, 310-316). Plaintiff's initial applications were denied and he filed a Request for Hearing before an Administrative Law Judge ("ALJ"). (Id. at 54-71 and 317-321). ALJ William L. Ragland ("ALJ Ragland") conducted a hearing on March 25, 2003, which was attended by Plaintiff and his counsel. (Id. at 27-42).

On July 18, 2003, ALJ Ragland entered a decision wherein he found that Plaintiff has the severe impairments of chronic obstructive pulmonary disease, diabetes mellitus and morbid obesity. (Id. at 20, Finding 3). The ALJ also concluded that the evidence was not sufficient to establish that Plaintiff's other alleged impairments, namely depression, general anxiety disorder, emphysema, shoulder problems, high blood pressure, congestive heart failure and foot pain, rose to the level of a severe impairment. (Id., Finding 5). The ALJ determined that Plaintiff's severe impairments do not meet or medically equal the listings and that he retains the residual functional capacity to perform work activities at the medium level of exertion. (Id., Finding 4). The ALJ then concluded that Plaintiff can return to his past relevant work as a truck washer

or painter as he described the jobs and as described in the Dictionary of Occupational Titles, (hereinafter "DOT"). (Tr. 20, Findings 7-9). On March 5, 2004, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, making it the final decision of the Commissioner. (Id. at 2-6). See 20 C.F.R. §§ 404.981, 416.1481. The parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

## II. **Background Facts**

Plaintiff was born on May 11, 1943 and was 59 years old at the time of the administrative hearing. (Tr. 30-31). Plaintiff is 5'11" and weighed 305 pounds at the time of the hearing. (Id. at 31). Plaintiff testified that he is divorced, and that his son and daughter-in-law live with him. (Id.) Plaintiff has an 11th grade education, and past relevant work as a painter, laborer, carpet cleaner and truck washer. (Id. at 30-32, 38).

Plaintiff testified that he became unable to work at his most recent job, washing trucks, on February 15, 2002, due to physical problems from emphysema, diabetes mellitus, depression, anxiety, foot pain and restricted shoulder movement (shoulder pain). (Id. at 32-34, 38-39). He also testified that he has congestive heart failure and high blood pressure. (Id.) According to Plaintiff, he lost his last truck washing job

3

because the company hired a permanent worker in his place. (Tr.
32, 35, 38-39). Plaintiff explained that he was placed on his
last truck washing job by Labor Finders, but after he lost that
assignment, Labor Finders would not send him out on any more
jobs due to his health problems. (Id. at 38-39). Plaintiff
testified that he has a driver's license, but limits his driving
to 100 miles or less. (Id. at 31-32).

Regarding his ailments, Plaintiff testified that both his
shoulders have an AC separation which pulls the collarbone out
of the socket, but he has not had surgery to correct it because
he thinks he may "end up worse." (Id. at 36). Additionally,
Plaintiff testified that Dr. Rouse, of the Baldwin County Mental
Health Center, currently treats him for his general anxiety
disorder. (Id. at 34). Plaintiff also indicated that he sees
Dr. Beck[1] at the Loxley Medical Clinic, a division of Franklin
Primary Healthcare Center, for his diabetes, and "everything
medical," and that Dr. Beck cautions him about his weight and
his diabetes, but does not treat him for obesity. (Id. at 34-
35). According to Plaintiff, because of his physical problems:
he can lift up to about the waist but then has to stop due to
shoulder pain; his feet and legs hurt from diabetes if he stands

---

[1]The ALJ mistakenly referenced Plaintiff's physician at the Loxley
Medical Center as "Dr. Berec." (Tr. 11).

for long periods of time (such as for more than 45 minutes); he is easily out of breath if he walks a short distance due to his emphysema; his psychiatrist believes that his mental health condition is related to his physical health;[2] squatting is almost impossible because it causes pain in his legs; and he cannot stoop or crawl. (Tr. 34-37).

Plaintiff also testified that while he can not recall all of the prescription medications he is currently taking, he does recall Seroquel (anti-psychotic for sleep), Effexor (anti-depressant), an occasional Valium, and Glucotrol (for diabetes). (Id. at 33, 37). According to Plaintiff, he also takes medication for high blood pressure, high cholesterol, high triglycerides and for his potassium levels. (Id.) Plaintiff also indicated that he has an inhaler (for breathing).[3] (Id.)

_____

[2]Plaintiff testified that his emphysema, diabetes and other physical conditions seem to have declined over the past nine months: "I was talking to my psychiatrist, and he stated that the mental health seem to have a lot to do with the physical health." (Tr. 35).

[3]The ALJ noted that Plaintiff's medications also include Glucovance, Magnesium, Potassium and Remeron. (Tr. 13).

III.   <u>**Issues On Appeal**</u>[4]

A.   Whether the ALJ erred in finding that Plaintiff retains the residual functional capacity to perform medium work?

B.   Whether the ALJ erred in failing to find that Plaintiff suffers from a severe mental impairment resulting in significant non-exertional limitations?

IV.   <u>**Analysis**</u>

   A.   <u>**Standard of Review**</u>

In reviewing claims brought under the Act, this Court's role is a limited one.  This Court's review is limited to determining: 1) whether the decision of the Secretary is supported by substantial evidence; and 2) whether the correct legal standards were applied.  <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 (11th Cir. 1990).[5]  A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  <u>Sewell v. Bowen</u>, 792 F.2d 1065, 1067 (11th Cir.

─────────────────────

[4]Although not set forth as an "Issue" in his brief, Plaintiff suggests that the ALJ "utiliz[es] a more difficult standard for those claimants who are in some ways less appealing[]" given Plaintiff's prior conviction for pedophilia.  (Doc. 14 at 11).  According to Plaintiff, the ALJ failed to carry out the Commissioner's responsibilities without regard to such prejudices.  The undersigned finds that there is no evidence in the record to support Plaintiff's suggestion that he was treated in a different manner than other claimants due to his status as a convicted pedophile.  In fact, the ALJ candidly shared with Plaintiff and his counsel his concerns regarding the dearth medical documentation for the relevant time period, strongly encouraging them to submit supporting medical data, and agreeing to hold the record open to allow them sufficient time in which to submit additional records for his consideration.  (Tr. 39-41).  The record does not reflect that any supporting data was submitted following the hearing.  Based upon the above, Plaintiff's "bias" argument fails and merits no further discussion.

[5]This Court's review of the Commissioner's application of legal principles is plenary.  <u>Walker v. Bowen</u>, 826 F.2d 996, 999 (11th Cir. 1987).

1986).  The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence.  <u>Brown v. Sullivan</u>, 921 F.2d 1233, 1235 (11th Cir. 1991); <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983) (stating that substantial evidence is defined as "more than a scintilla, but less than a preponderance[,]" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion[]").  In determining whether substantial evidence exists, courts must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision.  <u>Chester v. Bowen</u>, 792 F.2d 129, 131 (11th Cir. 1986); <u>Short v. Apfel</u>, 1999 U.S. Dist. Lexis 10163 (S.D. Ala. 1999).

   **B.  <u>Discussion</u>**

   An individual who applies for Social Security disability benefits or supplemental security income must prove their disability.  20 C.F.R. §§ 404.1512, 416.912.  Disability is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).  The Social Security regulations provide

a five-step sequential evaluation process for determining if a claimant has proven his or her disability.[6]   20 C.F.R. §§ 404.1520, 416.920.  In the case sub judice, the ALJ applied the usual five-step process for evaluating disability claims, finding that Plaintiff has not engaged in substantial gainful activity since his alleged onset of disability and that he has the impairments of chronic obstructive pulmonary disease, diabetes mellitus and morbid obesity, which are "severe" within the meaning of the Act.  (Tr. 20, Findings 2-3).  The ALJ then found that these impairments, when considered individually, or in combination, do not meet or equal the criteria listed in 20

---

[6]First, Plaintiff must prove that he has not engaged in substantial gainful activity.  Second, Plaintiff must prove that he has a severe impairment or combination of impairments.  Third, if Plaintiff proves that the impairment or combination of impairments meets or equals a listed impairment, then he is automatically found disabled regardless of age, education, or work experience.  If the Plaintiff cannot prevail at the third step, he must proceed to the fourth step where he must prove an inability to perform his past relevant work.  Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam).  In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: 1) objective medical facts and clinical findings; 2) diagnoses of examining physicians; 3) evidence of pain; 4) the claimant's age, education and work history.  Jones, 810 F.2d at 1005.  Once Plaintiff meets this burden, the burden shifts to the Commissioner to prove at this fifth step that Plaintiff is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given his residual functional capacity, age, education, and work history.  Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996).  See generally Sryock v. Heckler, 764 F.2d 834 (11th Cir. 1985).  If the Commissioner can demonstrate that there are such jobs that the Plaintiff can perform, the burden shifts back to the Plaintiff who must prove an inability to perform those jobs, in order to be found disabled.  Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999); Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989); Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

C.F.R. Pt. 404, Subpt. P., App. 1.  (Id., Finding 4).

Next, the ALJ found that Plaintiff's non-severe alleged impairments of depression, general anxiety disorder, shoulder problems, high blood pressure, congestive heart failure and foot pain could not be considered credible.  (Id., Finding 5).  The ALJ then found that Plaintiff has the residual functional capacity to perform work activities at the medium level of exertion and is capable of performing his past relevant work as a truck washer and painter, as such jobs are not precluded by his residual functional capacity such that his impairments do not prevent him from performing his past relevant work as he described it and under the DOT description.  (Id., Findings 7-9). As such, the ALJ determined that Plaintiff could perform his past relevant work, thus terminating the sequential evaluation process.  Plaintiff argues that the ALJ erred by finding that he retains the residual functional capacity to perform medium work, and by improperly evaluating his mental impairment.  (Doc. 14). Based upon a review of the record evidence, the undersigned finds that the ALJ did not err.  Substantial evidence of record supports the ALJ's decision.

The record contains numerous medical records that date back to 1992, and reflect that Plaintiff has received medical treatment for a variety of ailments over the years.  However, as

properly noted by the ALJ, the medical records for the period related to Plaintiff's February 15, 2002 alleged onset are quite limited. (Tr. 13). In the year immediately proceeding Plaintiff's alleged onset of disability, he was seen by Clyde Rouse, M.D., (hereinafter "Dr. Rouse") for a psychiatric evaluation at the Baldwin County Mental Health Center (hereinafter "BCMHC") on February 8, 2001. (Id. at 224-225). Dr. Rouse noted that:

- Plaintiff originally presented on October 23, 2000 for symptoms of major depression, but has had no prior psychiatric treatment. When he presented to BCMHC, he was extremely tearful and had a blunted affect, having some difficulties falling asleep and staying asleep, feeling very anxious, and experiencing difficulty with concentration and trouble with recent memory and immediate recall. He did not have any suicidal ideation. Plaintiff had just been released from prison for a sex-related offense and his main concern was wanting to reconcile with his wife. Plaintiff was started on Effexor XR 75 m.g. and Seroquel 50 m.g. during his October visit, and on December 7, 2000, his Effexor was increased to 150 m.g.

- During the February 8, 2001 evaluation, Plaintiff was alert, oriented and cooperative, "obviously much less depressed than he was when he originally presented[,]" but "still has a slightly blunted affect and some psychomotor retardation[,]" yet "his symptoms have decreased." His thinking was clear and goal directed, his speech was spontaneous, he smiled and laughed several times, he denied psychotic symptoms or suicidal/homicidal ideation, his concentration, recent memory and immediate recall were improved, he denied any mood swings, and he reported that he had been noticeably less irritable and was eating/sleeping well, and his insight and judgment were good.

10

- Dr. Rouse diagnosed major depressive disorder (single episode, moderate) and advised Plaintiff to continue taking Effexor and Seroquel, noting that his Effexor may need to be increased "at some point in the future[.]"

(Id.)

On July 26, 2001, Plaintiff returned to Dr. Rouse, and it was noted that:

- he has been doing "relatively well on his current medication regimen . . . until recently[]" (Effexor XR 150 m.g. twice daily and Seroquel 25 m.g. twice daily and 100 m.g. at bedtime).

- Plaintiff reported recently feeling "more depressed" with an "increase in his anxiety[,]" difficulty concentrating and "a lot of obsessive worrying[.]"

- Plaintiff denied any suicidal ideation, but continues to be "obsessed with desire to reunite with his estranged wife who now has another boyfriend."

- On examination, Plaintiff was alert, oriented and cooperative, with clear and goal directed thinking, moderate psychomotor retardation, but his concentration was somewhat impaired and his affect blunted. Plaintiff denied any auditory/visual hallucinations and no delusions could be detected. Plaintiff reported that his appetite had decreased, but that he was sleeping well with Seroquel; his anxiety had increased but he denied any panic attacks. Plaintiff denied recent mood swings, but reported that he had been irritable lately and that his anergia and anhedonia were worse. Plaintiff's insight and judgment were fairly good.

- Dr. Rouse diagnosed Plaintiff with recurrence of "significant depressive symptoms[]" and changed Plaintiff's medications by adding Remeron 15 m.g. and Zyprexa 2.5 m.g. at bedtime, "to help stabilize

his mood[,]" as well as added Valium 5 m.g. every 4-6 hours, "only as needed for severe anxiety."

• Plaintiff was scheduled to return to Dr. Rouse in three weeks; however, the record does not reflect that Plaintiff sought any further treatment from Dr. Rouse for his allegedly disabling mental impairment.

(Id. at 223).

Plaintiff was also treated from August 2, 2000 through February 1, 2002, by Gregory S. Funk, D.O., (hereinafter "Dr. Funk"), at the Gulf Shores General Practice Center. (Id. at 254-259). While Plaintiff was treated by Dr. Funk on five occasions during 2000 for high blood pressure, high blood sugar, anxiety and depression, the record does not reflect any visits to Dr. Funk during 2001. (Id.) On February 1, 2002, Plaintiff was prescribed Glucovane by Dr. Funk's office due to high hemoglobin and high blood sugar following a January 30, 2002 visit. (Tr. 251-255).

On March 11, 2002, Plaintiff was seen by John Houston, M.D., (hereinafter "Dr. Houston"), at the Loxley Family Medical Center, for complaints of head pressure and slight hypertension. (Id. at 262-263). Plaintiff indicated that he was not diabetic, but that he wanted to confirm his belief. (Id.) Blood work was performed, and it was noted that Plaintiff was taking Effexor, Glucovane, Magnesium K, Seroquel, Remeron and Valium. (Id.) Plaintiff reported that his occupation was a painter, and indicated that he had "put in for [d]isability." (Id. at 260). Plaintiff denied

any mental disease, and received an intensity pain score of zero. (Id. at 261).

On May 16, 2002, psychiatrist Charles H. Smith, M.D., (hereinafter "Dr. Smith"), performed a consultative disability evaluation of Plaintiff (Tr. 264-267) and noted the following:

- (Id. at 264): Upon presentation, Plaintiff had shortness of breath, normal motor skills, speech/language consistent with average intellect and his mannerisms suggested pedophilia, nicotine dependence, single major depression (mild) and a mixed personality disorder.

- (Id. at 265): Plaintiff denied suicidal ideations and reported that he has gone to BCMHC since November 2000 when he was released from prison; he takes Seroquel, Effexor, Remeron and Valium, as prescribed by Dr. Rouse.

- (Id.): Plaintiff reported that he was formerly an alcoholic but no longer drinks, and that despite having emphysema, he still smokes 3 ½ packs per day.

- (Id. at 265): Plaintiff is treated at the Loxley Medical Clinic for general medications and for his emphysema, high blood pressure and elevated cholesterol.

- (Id. at 265-266): The mental status examination showed that Plaintiff was able to meet his own needs and is capable of working; he is fully oriented; he is able to quickly do serial seven subtractions; he had intact and functional immediate, recent and remote memory; and could interpret proverbs ("doctor noted that [i]t is rare that a person is able to do both proverbs[]"). Plaintiff's thought processes were normal; his conversation was well-articulated; and his affect, mood, insight and judgment were normal. While there appeared to be documentation of a major

13

depressive disorder, it was noted that Plaintiff
was receiving appropriate medications and there
were no psychotic features, adding that his
depression "appears to be clearly linked to his
last divorce."

- (Tr. 266): While Plaintiff was diagnosed with
  pedophilia, personality disorder (NOS with
  borderline and antisocial features), major
  depressive disorder (single episode, mild),
  nicotine dependence and generalized anxiety
  disorder, Dr. Smith concluded that "this does not
  prevent him from working."  It was noted that
  Plaintiff's thought content and processes were
  normal (while some reports of depression, etc.,
  "[n]o abnormal features noted as part of thought
  content which would restrict vocational
  endeavors[]"); his affect was normal (no anxiety,
  nervousness, dysphoria, depression, psychomotor
  retardation/agitation, tearfulness/crying); and his
  mood was normal (while he reports depression,
  anhedonia and no energy, he did not report crying
  spells and "his mood is more stable than he gives
  himself credit for[]").

- (Id.): Plaintiff's insight and judgment should not
  impair vocational endeavors as he is currently
  receiving psychiatric services, appropriate
  medications, and medical services, as well as is
  under the scrutiny of a probation officer: "I think
  he is capable of working. . . . [and] of managing
  funds."

- (Id. at 266-267): Dr. Smith concluded that "I think
  this claimant is employable[,]" and he "is
  sufficiently stable to pursue vocational endeavors.
  . . . He has a history of doing manual labor and
  has worked as this year and only
  stopped working when he decided to apply for
  disability benefits. He appears to be able to meet
  his own needs independently and has independent
  ADL's, self-care, and hygiene skills."

On June 28, 2002, Huguette Douyon, D.O., (hereinafter "Dr.

Douyon"), of Gulf Coast Accumed Systems, LLC, performed a

14

disability examination of Plaintiff (id. at 268-269) and found as follows:

- (Id. at 268): Plaintiff reported that he was applying for disability secondary to chronic obstructive pulmonary disease. Plaintiff reported that he was told he has COPD twelve years ago and was told to stop smoking, but has not (still smokes 3 ½ packs per day); he complains that he is "not able to do much secondary to shortness of breath." Plaintiff denied any use of inhalers for his COPD and was in no acute distress.

- (Id.): On exam, Plaintiff weighed 315 pounds, lungs clear to auscultation with no rales, rhonci or wheezing, extremities had no clubbing, cyanosis or edema, distal pulses intact, gait normal and no focal neurological deficits.

- (Id. at 269): Dr. Douyon diagnosed diabetes mellitus type II, morbid obesity, chronic obstructive pulmonary disease, tobacco abuse and physical deconditioning.

- (Tr. 270): Dr. Douyon completed a Range of Motion report in which he found that Plaintiff's range of motion was unlimited in his cervical spine, shoulders, elbows, wrists and ankles and slight limitations were noted in his lumbar spine, hip and left hand.

On July 18, 2002, State Agency physician Robert O. Harris, M.D., (hereinafter "Dr. Harris"),[7] reviewed the medical records and completed a residual functional capacity assessment for Plaintiff. (Id. at 276-283). He found as follows:

- (Id. at 277): Plaintiff retains the residual functional capacity to lift and carry 10 pounds

---

[7]Dr. Harris referenced Dr. Douyon's June 28, 2002 examination of Plaintiff as support for his conclusions.

occasionally and 10 pounds frequently; to stand
and/or walk about 6 hours in an 8 hour work day; to
sit about 6 hours in an 8 hour work day; an
unlimited push/pull ability; and the ability to
climb, balance, stoop, kneel, crouch and crawl
frequently.

- (Id. at 278-282): Plaintiff has no manipulative,
visual, communicative or environmental limitations
and no treating/examining source statements about
his physical capacities were found in the file.

On July 26, 2002, State Agency psychologist William H.
Simpson, Ph.D., (hereinafter "Dr. Simpson"), reviewed the records
and completed a psychiatric review technique form, assessing
Plaintiff's Affective Disorder, Anxiety-Related Disorder and
Personality Disorder (id. at 288-301), as follows:

- (Id.): Plaintiff's major depression, generalized
anxiety disorder and personality disorder resulted
in mild restrictions of his activities of daily
living; mild difficulties in maintaining social
functioning; and moderate difficulties in
maintaining concentration, persistence or pace.

- (Id. at 298): There was insufficient evidence to
determine if Plaintiff had repeated episodes of
decompensation.

- (Tr. 288-301): Plaintiff does not satisfy the
diagnostic criteria for Listing 12.04 Affective
Disorders, Listing 12.06 Anxiety-Related
Disorders, or Listing 12.08 Personality Disorders.

Dr. Simpson also completed a mental residual functional
capacity assessment of Plaintiff. (Id. at 284-287). He concluded
that Plaintiff is not significantly limited in his ability to:

- remember locations and work-like procedures
- understand, remember and carry out short and simple

16

      instructions
- perform activities within a schedule
- maintain regular attendance and be punctual
- sustain an ordinary routine without supervision
- work in coordination or proximity with others without distraction
- make simple work-related decisions
- complete a normal work-day and work week
- interact appropriately with the general public
- ask simple questions or request assistance
- accept instructions and respond appropriately to supervisors
- get along with co-workers and peers
- maintain socially appropriate behavior
- respond appropriately to changes in the work setting
- be aware of normal hazards
- travel in unfamiliar places or use public transportation
- set realistic goals or make plans independently of others.

(Id.) Dr. Simpson opined that Plaintiff is moderately limited in his ability to understand, remember, and carry out detailed instructions and maintain attention and concentration for extended periods. (Id.) Dr. Simpson found that with regard to understanding, memory, sustained concentration and persistence, Plaintiff could understand, remember and carry out short, simple instructions as well as attend for 2 hour periods. (Id. at 286). Dr. Simpson also found no significant limitations in Plaintiff's social interaction and adaptation. (Id.)

In addition to the above-referenced medical evidence, Plaintiff, on June 5, 2002, completed a daily activities questionnaire, (Tr. 145-149), wherein he reported as follows:

17

- (<u>Id</u>. at 145-147): He described his average day as sitting around and trying to stay cool and that he takes Seroquel to help him sleep.  He also reported that he is able to care for his personal needs without assistance, and that he prepares and cooks meals, shops for his personal needs, performs household chores (cleans kitchen and washes clothes) without assistance, watches television and can remember what he watches, but does not read. Plaintiff leaves his house twice per day and generally goes to the store or to visit his sister, without assistance.

- (<u>Id</u>. at 148): Plaintiff reported problems concentrating as he is distracted by other thoughts when he works, takes many breaks and "star gazes." Plaintiff reported that he performs a task/chore for 15 minutes before needing a break, and that most tasks are not finished but "put on the back burner[.]"  Plaintiff reported that he has no problems with cooking meals, cleaning, shopping, taking public transportation, paying bills, taking care of the house or using the phone.

On March 25, 2002, Plaintiff completed a work history report in which he reported past work as 1) a truck washer: worked 8 hours per day 5 days per week using machines, tools and equipment, used technical knowledge or skills, but did not write reports or complete forms, spent 3½-4 hours per day walking and sitting, heaviest weight lifted less than 10 lbs and weight frequently lifted less than 10 lbs, and did not supervise anyone or hire/fire anyone; 2) a pipe layer: worked 7 ½ hours per day 5 days per week, work involved walking and stooping with some crouching and handling, grabbing or grasping big objects, he would lift/carry plastic pipe 15-20 times per day, heaviest weight lifted 50 lbs

and weight frequently lifted 25 lbs, and he did not supervise others; and 3) painter: worked 8 hours per day 5 days per week, used tools, did not use any technical knowledge/skills or write reports/complete forms, work involved walking 30 minutes per day, standing 6 hrs per day, crouching, crawling and stooping 2 hrs per day with some climbing, he lifted/carried paint about 31 lbs each and ladders weighing about 30-40 lbs each, heaviest weight lifted 50 lbs, frequently lifted less than 10 lbs, and he did not supervise others; and 4) carpet cleaner. (Id. at 136-144).

The foregoing constitutes the substance of the pertinent records before the ALJ.  The ALJ reviewed Plaintiff's testimony, his medical records, his alleged symptoms of pain, his credibility and his activities of daily living, and concluded that Plaintiff retains the physical residual functional capacity to perform medium work. (Tr. 11-18).  The ALJ further noted Plaintiff's past work as a painter, laborer, carpet cleaner, and truck washer, and after reviewing the record evidence, concluded that Plaintiff retains the residual functional capacity for medium work, and that his past relevant work constituted medium work such that he is not precluded from working as a painter/truck washer.  (Id. at 18).  While Plaintiff argues that the ALJ erred in finding that Plaintiff has the residual functional capacity to perform medium

work,[8] the undersigned finds that substantial evidence supports the ALJ's decision.

As noted _supra_, at step four of the sequential analysis, the burden is on the claimant to show that he can no longer perform his former work because of his impairments. _Jones v. Bowen_, 810 F.2d 1001 (11th Cir. 1986). Section 404.1520(e) of the Commissioner's regulations requires a review and consideration of a claimant's residual functional capacity and the physical and mental demands of past work before a determination can be made that he or she can perform past relevant work. Residual functional capacity is a measure of what a claimant can do despite limitations. 20 C.F.R. § 404.1545. It is the function of the ALJ to determine the claimant's residual functional capacity through examination of the evidence and resolution of conflicts in the evidence. _Wolfe v. Chater_, 86 F.3d 1072, 1079 (11th Cir. 1996). An ALJ must base the assessment upon all of the relevant evidence of a claimant's remaining ability to do work, notwithstanding his impairments. _Lewis v. Callahan_, 125 F.3d 1436, 1440 (11th Cir. 1997); 20 C.F.R. §§ 404.1546, 404.1527. In finding that a claimant has the capacity to perform a past relevant job, the decision of

---

[8]Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighting up to 25 pounds; if someone can do medium work, they can also do sedentary and light work. 20 C.F.R. §§ 404.1567(c), 416.967(c); SSR 83-10.

the Commissioner must contain among the finding, a finding of fact as to the claimant's residual functional capacity, a finding of fact as to the physical and mental demands of the past job occupation, and a finding of fact that the claimant's residual functional capacity would permit a return to the past job or occupation.

Plaintiff contends that the ALJ's finding, that he can perform medium work, is erroneous because the ALJ did not specify what weight he assigned to the opinion of Dr. Douyon and rejected his findings regarding Plaintiff's exertional limitations, and further rejected Dr. Harris' opinion that Plaintiff is limited to light work. A review of the ALJ's decision evidences that he gave full weight to Dr. Douyon's evaluation. Dr. Douyon did not include any lifting or other work restrictions in his report of Plaintiff's physical examination. (Tr. 14, 270). The examination revealed that Plaintiff has no limitations in the range of motion in his cervical spine, shoulders, elbows, knees or ankles, and only slight limitations in his lumbar spine, hips and left leg. (Id.) Additionally, although Plaintiff complained of shortness of breath, Dr. Douyon's examination revealed that he had clear lungs with no rales, rhonchi or wheezing, his extremities showed no evidence of clubbing, cyanosis or edema, and his gait was normal. (Id.) Contrary to Plaintiff's assertions, these

21

findings fail to demonstrate that Plaintiff has any exertional limitations.  In fact, neither Dr. Douyon, nor any other examining doctor, imposed any lifting or other work restrictions upon Plaintiff.  Accordingly, the ALJ's findings are consistent with Dr. Douyon's report.

The ALJ discussed the physical residual functional capacity assessment completed by non-examining State Agency Physician Dr. Harris, and properly rejected his finding that Plaintiff is limited to lifting/carrying no more than 10 pounds.  (Tr. 14, 18). In so doing, the ALJ determined that the finding was not supported by the record evidence, and as the opinion of a non-examining source, it was entitled to little weight.  (Id.)  Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990).  Indeed, while Plaintiff testified that he suffers from foot pain if he stands more than 45 minutes, the ALJ correctly determined that the record evidence does not contain any evidence of treatment for, or documented complaints of, this condition, and that Plaintiff had failed to seek medical treatment of any kind, regarding his alleged impairments, in over a year.  Additionally, Plaintiff's activities of daily living do not support a finding of physical functional limitations.  While Plaintiff claimed that all he does is "sit around and try to stay cool" every day, the record evidence establishes that he performs household chores, goes out

of the house to shop and visit with friends, rides the lawn mover, takes care of his personal needs, and is able to drive and take public transportation.  Moreover, Plaintiff's shortness of breath symptom is stable with prescribed medicine and he has not sought treatment for any exacerbation of that condition in the past year. In fact, Dr. Douyon's examination revealed that Plaintiff had clear lungs with no rales, rhonchi or wheezing.  It is also noteworthy that while Plaintiff has a history of emphysema due to his extensive history of nicotine abuse, he still smokes despite his doctor's advice to quit. (Tr. 176, 268).  Plus, during a June 28, 2002 consultative examination, Plaintiff denied the use of any inhaler to control his chronic obstructive pulmonary disease. (Id. at 269).  Further, none of Plaintiff's treating or examining physicians placed any restrictions on his ability to perform work-related activities or stated that he was disabled.  Accordingly, based on the substantial evidence before the ALJ, he could reasonably conclude that Plaintiff's condition was not so limited that it would preclude medium work.  Arnold v. Checkler, 732 F.2d 881, 884 (11th Cir. 1984). Thus, substantial evidence supports the ALJ's conclusion that "the evidence indicates the claimant could return to these occupations [painter/truck washer] as he actually performed either job or as either job was generally performed in the national economy." (Tr. 18).  Barnes, 932 F.2d at 1358.

23

Plaintiff also contends that the ALJ erred in finding that he does not suffer from a severe mental impairment (depression and general anxiety disorder) given the opinions and findings of health care professionals at BCMHC (including Dr. Rouse), Dr. Smith's consultative psychological examination, and Dr. Simpson's mental residual functional capacity assessment and psychiatric review technique form. (Doc. 14 at 7-10). Upon consideration of the entire administrative record and Plaintiff's testimony at the administrative hearing, the undersigned finds that the decision of the ALJ, that Plaintiff does not suffer from a severe mental impairment, is supported by substantial evidence.

The undersigned is aware of the standard for a non-severe impairment as set forth in <u>Brady v. Heckler</u>, 724 F.2d 914, 920 (11th Cir. 1984), which states that an impairment is severe if it causes more than just a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the ability to work without regard to the plaintiff's age, education or work experience.  However, the undersigned also recognizes the standard for review, <u>i.e.</u>, is there substantial evidence in the record to support the ALJ's finding.  Substantial evidence which is defined as "more than a scintilla but less than a preponderance," consists of "such relevant evidence as a reasonable person would accept as adequate

so support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); Bloodsworth, 703 F.2d at 1239. The "reasonable person" standard dictates that if there is pertinent and adequate evidence supporting a decision, it must be upheld. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). Additionally, this Court may neither substitute its own judgment for the Commissioner's nor reevaluate the evidence unless the decision is clearly illogical and unsubstantiated. Bloodsworth, 703 F.2d at 1239. See also Powell v. Heckler, 773 F.2d 1572, 1575 (11th Cir. 1985). Therefore, even when the evidence appears to weigh against the Commissioner's decision, this Court must affirm the decision if there is sufficient supporting evidence. Martin, 894 F.2d at 1529; Bloodsworth, 703 F.2d at 1239.

In concluding that Plaintiff's mental condition does not rise to the level of a severe impairment, the ALJ found that although he has been diagnosed with, and treated for, depression and anxiety, his statements regarding the severity of his mental impairments are "self-serving," "wholly unsubstantiated by the objectively demonstrable evidence or are conditions that have responded within twelve months to prescribed treatment without any lasting functional limitations." (Tr. 16). The ALJ further noted that evidence of psychiatric treatment, from the alleged disability onset date of February 15, 2002 forward, was "non-

25

existent[]" and moreover, that Plaintiff has "failed to maintain a treatment regimen with a mental health professional regarding his alleged mental impairments . . . [and] [i]nstead . . . has relied on a general health practitioner to prescribe medication and 'counseling.' The only record available for review in this respect are those of consultative psychiatric exams." (Id.)

At the outset, it should be noted that while the ALJ did not discuss the records from BCMHC, since they do not pertain to the period in question, the undersigned's review of these records reveals that after Plaintiff was prescribed anxiety/depression medication in October 2000, he experienced significant relief in his anxiety and mood by February 2001 ("tremendous relief in anxiety and mood," "new outlook on life," and "obviously much less depressed").[9] (Id. at 224). Further, while Dr. Rouse advised Plaintiff, in July 2001, to return to BCMHC for treatment due to a reported recurrence of depressive symptoms, the record does not reflect that Plaintiff ever did so. (Id. at 223, 226).

Additionally, while Plaintiff contends that the reports of Dr. Smith and Dr. Simpson demonstrate that his mental impairment significantly limits his ability to work, Dr. Smith's report does not contain any such limitations. As noted supra, in his May 16,

---

[9]Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988) (finding that a remediable or controllable medical condition is generally not disabling).

2002 consultative psychological evaluation of Plaintiff (id. at

264-267), Dr. Smith found that:

- Even though Plaintiff subjectively reported
  depression and was diagnosed with pedophilia,
  personality disorder (NOS with borderline and
  antisocial features), major depressive disorder
  (single episode, mild), nicotene dependence and
  generalized anxiety disorder, his mood was "more
  stable than he gave himself credit for" and his
  "insight and judgment should not impair his
  vocational endeavors."

- Plaintiff is able to take care of his own needs
  independently and has independent activities of
  daily living, self-care and hygiene skills (he
  splits the household chores with his wife, does
  yard work, socializes with his wife, watches
  television, rides the lawnmower outside, takes a
  bath, does yard work).

- Plaintiff was fully oriented, he was able to
  quickly do serial seven subtractions, his
  immediate, recent and remote memory were intact and
  functional, he was able to interpret proverbs, he
  had normal thought processing, well-articulated
  conversation and had a normal affect, mood, insight
  and judgment.

(Tr. 264-267).

There is nothing in Dr. Smith's report which suggests that

Plaintiff's mental impairment imposes a significant limitation on

his ability to work.  To the contrary, Dr. Smith's report suggests

that Plaintiff is more stable than he gives himself credit for,

and that his thought processes, insight and judgment are normal.

While Dr. Simpson, who did not examine Plaintiff, opined that he

is moderately limited in his ability to understand, remember, and

27

carry out detailed instructions as well as maintain attention and concentration for extended periods, there is no evidence in the record which supports his finding.  Dr. Smith found no such limitations.  Instead, Dr. Smith found that Plaintiff was capable of quickly doing serial seven subtractions, and that he could interpret two proverbs, which is unusual for most people.  (Tr. 265-266).  Plaintiff also reported that he has no problems performing tasks such as cooking, taking care of his dog, shopping, taking public transportation, paying bills, taking care of the house and using the telephone.  (Id. at 145-149). Moreover, as correctly found by the ALJ, while Plaintiff has had past episodes of depression, the record clearly reflects that his condition is stable with prescribed medicine, that he has not sought treatment for any exacerbation of depression in at least one year, and that if he had indeed experienced restricted activities of daily living, the record would reflect a need for a more intensive medical regimen.  (Id. at 17).

Based upon a careful review of the record evidence, the undersigned finds that substantial evidence supports the ALJ's determination that Plaintiff's mental impairment does not impose any significant work-related limitations.  Simply put, neither the medical evidence, nor Plaintiff's testimony regarding his daily activities, contradict the ALJ's findings.  See supra.

28

Accordingly, the undersigned finds no error in the ALJ's determination of Plaintiff's mental residual functional capacity.

## V.  Conclusion

For the reasons set forth, and upon careful consideration of the administrative record and memoranda of the parties, it is recommended that the decision of the Commissioner of Social Security, denying Plaintiff's claim for period of disability, disability insurance benefits and supplemental security income benefits, be **AFFIRMED.**

The attached sheet contains important information regarding objections to this report and recommendation.

**DONE** this **25**th day of **October, 2005**.

       /s/ SONJA F. BIVINS
**UNITED STATES MAGISTRATE JUDGE**

29

### MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION <u>AND FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>

1.  **<u>Objection</u>**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a <u>de</u> <u>novo</u> determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. <u>See</u> 28 U.S.C. § 636(b)(1)(c); and <u>Lewis v. Smith</u>, 855 F.2d 736, 738 (11th Cir. 1988).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.  **<u>Opposing party's response to the objection</u>.**  Any opposing party may submit a brief opposing the objection within ten (10) days of being served with a copy of the statement of objection.  <u>See</u> Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3.    **Transcript  (applicable  where  proceedings  tape recorded)**.  Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

         **   /s/  SONJA F. BIVINS   **
         **UNITED STATES MAGISTRATE JUDGE**